## STORER v. BARR.

PATENTS; INTERFERENCE; DILIGENCE.

1. A race of diligence between rival inventors cannot be judged by a mere computation of time. A period of time that might constitute due diligence in one case may, in another case, be inexcusable. The circumstances of each case must determine this question.

2. *Quære*, whether delay in the filing of his application by one of the parties to an interference, caused by the act of the assignee of the other party, will estop the latter from claiming lack of diligence against his rival.

3. Where a party to an interference, although the first to conceive, was inactive at the date of the other party's disclosure, and his inactivity continued until after his rival filed his application, and his excuse for delay covers a time subsequent to the filing of such application, he will be held to be lacking in diligence.

No. 590. Patent Appeals. Submitted November 12, 1909. Decided December 7, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Howard P. Dennison* and *Mr. Theodore K. Bryant* for the appellant.

*Mr. Wesley G. Carr* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of invention to appellee, John M. Barr, for a voltage regulator for alternating currents. The case comes here, with the decisions of all the tribunals of the Patent Office in favor of appellee. The issue of the interference contains thirty-two counts, the following, however, sufficiently illustrating the invention for the purposes of this inquiry:

"1. A voltage regulator for electrical distributing systems including a transformer and means for winding and unwinding one of its conductors to vary the effective voltage of one of its circuits."

"7. In a voltage regulator for electrical distributing systems, a transformer and reels carrying part of its winding in its magnetic field, said winding being adapted to be wound and unwound from one reel to another."

"12. In a voltage regulator for electrical distributing systems, a transformer, and a reel for supporting part of its winding, in combination with current collecting segments revolving with the reel, and means for taking the current to and from said segments.

"13. In a voltage regulator for electrical distributing systems, a transformer, and a reel for supporting part of its winding, in combination with a current collecting segment and brushes for taking current to and from said segment.

"14. In a voltage regulator for electrical distributing systems, a transformer and two rotary elements upon which part of its winding is adapted to be wound and unwound, in combination with a plurality of current-collecting segments rotating with each rotary element, the segments for each element being insulated from each other, and means for taking the current to and from said segments.

"15. In a voltage regulator for electrical distributing systems, a transformer, separate reels upon which the secondary winding is adapted to be wound and unwound, commutator-segments, each rotating with one of the reels, a brush for each commutator,

each segment and brush of each commutator being so arranged as to prevent short circuiting of the transformer."

"28. The combination with an electric supply circuit, of a voltage regulator therefor comprising a magnetizable core, a primary magnetizing winding connecting to said supply circuit, a secondary winding, and means for transferring any desired number of turns of said secondary winding from one portion of the core to another portion thereof."

"30. The combination with a source of alternating current energy, a magnetizable core, a primary magnetizing winding mounted upon said core and energized from said source, and a secondary winding for supplying energy to an external circuit, of means for transferring one or more turns of the secondary winding from one portion of the core to another portion thereof."

Appellee filed his application in the Patent Office July 17, 1905, and appellant, Simon B. Storer, filed his application December 5, 1905. Appellant was found to have had a conception of his invention, which probably amounted to a disclosure, in October, 1904, but, inasmuch as he claims November 15, 1904, as his date of disclosure, an earlier date cannot be awarded him. Appellee, on the other hand, has been given May 16, 1905, as his date of conception and disclosure of the invention here in issue. We have examined the evidence, and find no reason to disturb the conclusion of the Examiner of Interferences on this point. The filing dates of each of the parties must be regarded as their respective dates of reduction to practice. The dates of the parties thus established seem to have been accepted as correct through the various stages of this proceeding. The sole question to be determined is whether appellant has been lacking in diligence. This is the point on which the case turned in each of the tribunals below.

It is insisted by counsel for appellant that the Westinghouse Electric & Manufacturing Company, the conceded assignee of appellee's rights in the invention in issue, lulled appellant into inactivity by a pretended desire to purchase his invention. It appears that during the period between his date of disclosure and December, 1904, appellant was in the employ of the West-

inghouse Electric & Manufacturing Company; that he had sold other patents to this company, and that he had begun negotiations for the sale of this invention to the company in the latter part of July, 1905. There is some evidence of a conversation appellant had with one Scott in New York city. Scott was the general electrician of the Westinghouse Company. Scott requested appellant to write him a full description of the invention in order that he might take it up with the proper officials of the company. This appellant did in a letter dated July 25, 1905. Scott does not seem to have answered this letter until October 4, 1905. His letter contained the following statement: "It happens that a patent application upon a substantially similar arrangement was made several months ago based upon the idea of two of our men here, Messrs. Thompson and Barr, who had been independently working along the same line. We do not see that it would be worth while for us to make application upon your substantially similar invention until we know the facts of the application already made, unless you antedate our inventors. If you can go back further than March 12, 1905, it will probably be best for us to put in an application for you. If, therefore, your date runs back sufficiently far, and you would like to have us do so, we will proceed with the application." It appears from this that the Westinghouse Company was considering the probable rights of both the appellee and the appellant, and were prepared to purchase the rights of whichever one should be able to prevail. In fact, the subsequent correspondence shows that the Westinghouse Company was contemplating the withdrawal of appellee's application and the substitution therefor of an application by appellant. This is evidenced by a letter to appellant from one Osborne, an officer of the company, dated November 17, 1905, in which he said: "My investigation, therefore, shows me no ground for withdrawing the patent and substituting this, and I would suggest, as when you were here, that you proceed independently to make your application, and let the merits of the case come out in the Office. I recognize that our necessarily slow consideration of this matter might possibly have delayed you somewhat, but, as explained to you, the mat-

ter could not have been naturally otherwise, and we believe will not be to your disadvantage, as our patent had already been applied for before you had brought this matter to our attention."

This contention of delay caused by the negotiations with the Westinghouse Company must fail, for the reason that appellee had filed his application before appellant brought his invention to the attention of the company. We do not regard the time elapsing between the date when the company's attention was called to appellant's invention and his filing date as of consequence in determining this case. Hence, it becomes immaterial whether the delay during that period was due to the action of the Westinghouse Company or not. Had this been the sole delay, the company, as appellee's assignee, might have been estopped to assert it against appellant, but it is unnecessary to decide that point. Appellant's inactivity from November 15, 1904, the date of his disclosure, until after appellee had filed his application, is not satisfactorily accounted for, and it is here that the case turned against him in the Patent Office. We think the evidence fully sustains the conclusion of the Examiners-in-Chief on this point, where, in their opinion, they said: "But, anyway, there is the period of time between just prior to May 16, 1905, and July 19, 1905, which must be accounted for by him, Barr having in the meantime, July 17, 1905, constructively reduced the invention to practice by the filing of his application for the patent. It is no help to Storer to seek to explain his delay after July 19, 1905, unless he can satisfactorily account for the time between it and May 16, 1905. He has sought to do this by explaining that he wished to assure himself of the best form, as well as all the forms, in which the invention would be operative. But in answer to the question, 'Did you develop all of these forms, and, if so, during what period?' he replied that he was unable to give the exact period as to all, 'but the essential forms were developed within a few months after his first conception of the general idea.' As he testified that his first conception was in August, 1904, his testimony results to the effect that he developed the essential forms as early, at least, as November, 1904, some six months prior to May 16, 1905, the day Barr

conceived the invention, and therefore the development of the essential forms at least cannot account for the delay on or after May 16, 1905, in filing his application, nor, what is more to the point, his inactivity during the time between May 16, 1905, and July 19, 1905.

A race of diligence between rival inventors cannot be judged by a mere computation of time. A period of time that might constitute due diligence in one case may, in another case, be unexcusable. The circumstances of each case must determine this question. Practically no excuse is here given for appellant's delay. From his own statement, his forms were completed long before appellee came into the field. He was inactive at the date of appellee's disclosure, and his inactivity continued until after appellee filed his application.

We see no reason for disturbing the decision of the Commissioner of Patents. It is affirmed, and the clerk is directed to certify these proceedings as by law required.          *Affirmed.*